**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.                                                No. CIV 08-747 JC/LFG
                                                    No. CR 06-160 JC

FERMIN PEREZ-BENITEZ,

        Defendant/Movant.

**MAGISTRATE JUDGE'S AMENDED[1] FINDINGS
AND RECOMMENDED DISPOSITION[2]**

**Findings**

        1.        On August 11, 2008, Movant Fermin Perez-Benitez ("Perez") filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, with exhibits, including his own sworn

---

[1] The Findings and Recommended Disposition ("R&R) was originally filed on March 2, 2009. [Doc. 6.] In a response to the R&R [Doc. 7], Perez claimed that he never received the government's response [Doc. 5] to his § 2255 motion. Thus, the Court required the government to re-serve Perez with a copy of its response. [Doc. 9.] The Court inadvertently failed to provide the government with a copy of its March 19, 2009 Order requiring that the government re-serve its response on Perez. On April 6, 2009, the Court corrected the service error and provided the government with a copy of its March 19, 2009 Order. Thus, on April 7, 2009, after receipt of the Court's Order, the government re-served Perez with its original response to the motion. [Doc. 11.] The R&R was also amended to correct a factual inaccuracy as to Perez's period of incarceration, and other minor changes were made. Now that Perez has a copy of the government's response and the amended R&R, he is given another period of ten (10) days after service of this amended R&R to file objections. *See* fn. 2.

[2] Within ten (10) days after a party is served with a copy of these amended findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such amended findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

statements. [Doc. 1.] On September 30, 2008, the government filed a response with exhibits. [Doc. 5.] The § 2255 motion is fully and adequately briefed. Perez is incarcerated at the Federal Correctional Institute in Miami, Florida.

2.	In making its recommendation on this matter, the Court examined all of the pleadings and attachments in this civil matter and the related criminal case [No. CR 06-160],[3] and reviewed the transcripts of the criminal trial and sentencing proceedings before the Honorable John E. Conway. After carefully considering the pleadings, attachments, argument by parties and the pertinent law, the Court recommends that Perez's § 2255 petition be denied. Because it is possible to resolve the issues on the pleadings, and the record establishes conclusively that Perez is not entitled to relief, the Court concludes that no evidentiary hearing is necessary. *See* 28 U.S.C. § 2255; United States v. Kennedy, 225 F.3d 1187, 1193 (10th Cir.2000), *cert. denied*, 532 U.S. 943 (2001).

**Background**

3.	On January 12, 2006, Perez and co-defendant Charlene Perez were arrested, following several hand-to-hand buys of crack cocaine with an undercover officer. [Doc. 5, p. 1.] On January 13, 2006, a criminal complaint was filed against Perez and co-defendant Charlene Perez. Defendants were charged with conspiracy to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841 and 846. [Doc. 1, No. CR 06-160.] On January 13, 2006, United States Magistrate Judge Alan C. Torgerson held an initial hearing. The detention and preliminary hearings were scheduled to occur later on January 13, 2006, but Defendants made a verbal request to continue the hearing for five days. The Court

---

[3]The Court refers to pleadings in the criminal case, No. CR 06-160, as CR Doc. ___. Pleadings in this civil habeas proceeding are referred to as Doc. ___.

granted the request and held the hearings on January 18, 2006. [Doc. 9, 11, No. CR 06-160.] Perez was ordered to be detained pending trial. [Doc. 12, No. CR 06-160.]

4. On January 24, 2006, an Indictment was entered charging Perez with conspiracy to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 846, distribution of more than 5 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), possession with intent to distribute more than 5 grams of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and aiding and abetting in violation of 18 U.S.C. § 2. [CR Doc. 15.]

5. Perez's arraignment was held on February 2, 2006. [CR Doc. 21.]

6. Senior United States District Court Judge John E. Conway set this case for trial on April 18, 2006. [CR Doc. 35.]

7. On April 10, 2006, co-defendant Charlene Perez filed an unopposed motion to continue the April 18, 2006 trial. The unopposed motion noted that the extension time period would be excluded in computing the speedy trial time under 18 U.S.C. § 3161, and indicates Perez did not oppose the request. [CR Doc. 38.]

8. On April 11, 2006, Judge Conway granted the continuance and vacated the trial date, observing that the time period of the extension was excluded in computing the time that the trial was required to begin under the Speedy Trial Act. [CR Doc. 39.]

9. On July 24, 2006, the trial was re-set on August 15, 2006. [CR Doc. 43.]

10. On August 1, 2006, Perez filed an unopposed motion to continue the August 15, 2006 trial date, stating that counsel for Perez was concurrently filing a motion for a mental evaluation to determine whether Perez was competent to stand trial. [CR Docs. 44, 45.]

11. On August 10, 2006, the Court granted Perez's motion for transfer to a medical center for a determination of mental competency to stand trial. [CR Doc. 46.]

12.     On December 14, 2006, the trial court re-set Perez's trial to begin on January 9, 2007. [CR Doc. 52.]

13.     On December 18, 2006, the defendants filed a joint motion to continue the January 9, 2007 trial setting, stating that plea negotiations were ongoing and additional time was needed. Perez's attorney stated that he had just received the completed competency evaluation for Perez and needed additional time to investigate the case. The motion notes that the time period of the extension would be excluded in calculating the speedy trial deadline. [CR Doc. 53.]

14.     On December 22, 2006, Judge Conway vacated the January 9, 2007 trial setting. [Doc. 54, No. CR 06-160.] The trial was re-set for February 13, 2007. [CR Doc. 55.]

15.     On January 18, 2007, the Court scheduled a competency hearing for Perez, but at the hearing Perez's attorney sought to have a Spanish-speaking attorney assigned to Perez. Thus, the competency hearing was not held, and a Spanish-speaking attorney was assigned to Perez on January 19, 2007. [CR Docs. 56, 57, 58, 59.]

16.     On January 28, 2007, defendants filed a joint motion to continue the trial set for February 13, 2007, based on Perez's new attorney's need to prepare for the trial and review the competency findings. Defendants waived their right to a speedy trial in this motion. [CR Doc. 60.] The motion was granted. [CR Doc. 61.] The trial was re-set for April 17, 2007.

17.     On February 26, 2007, Judge Conway filed an "Agreed Order" as to Perez finding that he was competent to stand trial. [CR Doc. 62.]

18.     On April 17, 2007, a two-day trial was conducted. Perez testified at trial. [CR Doc. 115.] The jury found Perez guilty of all eight counts in the Indictment. [CR Doc. 77.]

19.     On August 15, 2007, a sentencing hearing was held before Judge Conway. Perez was sentenced to a total term of 151 months. He was advised of his right to appeal. He was to be

deported, if possible, after serving his sentence. [CR Docs. 90; 112.] On August 15, 2007, judgment was entered. [CR Doc. 91.]

20. On August 22, 2007, Perez filed a notice of decision **not** to appeal. [CR Doc. 93.] The pleading states that Perez understood he could appeal the judgment but that he elected not to appeal it. Perez's attorney filed an affidavit in support of this pleading, again stating that he had explained Perez's right to appeal but that Perez elected not to pursue an appeal. [CR Doc. 93, attachment.]

21. On August 27, 2007, an amended Judgment was entered.

22. On March 31, 2008, Perez filed a motion to appoint counsel, stating he sought to appeal his sentence and that he had informed his attorney, more than once, to appeal but that his attorney had not done so. [CR Doc. 98.] On April 15, 2008, Attorney Gleria was again appointed as counsel for Perez. [CR Doc. 99.]

23. On May 26, 2008, Perez filed a motion for retroactive application of sentencing guidelines to crack cocaine offense to reduce the sentence. [CR Doc. 100, Motion to Reduce Sentence pursuant to 18 U.S.C. §3582(c)(2).] Based on subsequent amendments to the sentencing guidelines with respect to cocaine convictions, Perez requested that his original sentence of 151 months be reduced.

24. After Perez's motion was briefed, Judge Conway held a hearing July 9, 2008. [Doc. 104.] Perez's presence was not required at the hearing. [CR Doc. 104]  On the same day, the Court issued an Order reducing Perez's sentence from 151 months to 121 months. [CR Doc. 106.]

25. Also on July 9, 2008, Judge Conway sentenced Perez to a total term of imprisonment of 121 months. Perez was not present for the hearing and the sentencing minutes indicate his presence was waived. [CR Doc. 114.]

26. On August 11, 2008, Perez filed the present federal habeas motion. [Doc. 1.]

27.     Perez's habeas motion sets out five claims: (1) ineffective assistance of counsel for failure to file an appeal; (2) re-sentencing on July 9, 2008, without his presence, was a violation of the Magistrate Act; (3) violation of the Speedy Trial Act; (4) fatally defective indictment; and (5) lack of subject matter jurisdiction. [Doc. 1.]

28.     The government argues that none of the claims have merit, and that Perez's motion should be denied and dismissed with prejudice.  [Doc. 5.]

## Analysis

### I.     ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL

*A.     Legal Standard:*

29.     "The benchmark for judging any claim of ineffectiveness must be whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052 (1984)  To obtain relief on an ineffective assistance of counsel claim, a defendant must satisfy the requirements set out in Strickland.  First, the movant "must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688.  In other words, trial counsel's performance was neither reasonable under prevailing professional norms nor sound trial strategy.  Second, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.  A probability is reasonable if it is sufficient to undermine confidence in the outcome. Id.  The Court may address the performance and prejudice components in any order and need not address both if it concludes that the defendant failed to satisfy demonstrating one of the two prongs.

30.     In Strickland, the United States Supreme Court emphasized that judicial scrutiny of counsel's performance must be highly deferential.  An adverse result is not evidence of ineffective

assistance, and a court should not second-guess counsel's representation after an adverse verdict or sentence. An attorney's performance should be evaluated from counsel's perspective at the pertinent time, giving due regard to counsel's trial tactics and strategy, and thereby eliminating any distorting effects of 20/20 hindsight. A court must indulge a strong presumption that counsel's conduct was reasonable and could have been considered sound trial strategy. Id. at 689. The defendant has the burden of proof to overcome that presumption. United States v. Cronic, 466 U.S. 648, 658 (1984).

### B.      Discussion:

32.     It is not clear that Perez seeks to bring a separate claim of ineffective assistance of counsel for failure to file an appeal. His § 2255 petition does not set out this claim separately, although he argues that he did not appeal his conviction because his attorney "took it upon himself not to do so, contrary to my request to file an appeal." Perez further asserts that he "never waived nor consented to waive any of my appeal rights." [Doc. 1, p. 5.]

32.     The Court analyzes this claim in the event that Perez intended to assert an ineffective assistance of counsel claim for failure to appeal. As noted above, Perez's attorney filed an affidavit just days after his August 15, 2007 sentencing, averring that trial counsel had explained Perez's right to appeal the Judgment within ten days after entry of the Judgment and had resolved Perez's questions about his right to appeal the Judgment. [Doc. 5, Ex. A, Affidavit; CR Doc. 108.] Perez's attorney further stated he had confirmed with Perez that Perez understood his right to appeal. Notwithstanding that right, Perez requested that trial counsel not file an appeal. Thus, Perez's attorney did not appeal the Judgment "in accordance with Mr. Perez-Benitez's wish not to appeal . . . ." [Doc. 5, Affidavit, ¶ 6; CR Doc. 108.]

33.     It is true that an attorney who disregards "specific instructions" from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable. Roe v. Flores-Ortega,

7

528 U.S. 470, 476-77 (2000). Here, there is no demonstration, other than argument by Perez, that he provided specific instructions to his attorney to appeal the judgment. Moreover, in his § 2255 petition, Perez does not set out any nonfrivolous bases for an appeal that his attorney should have considered, nor does he show that a rational defendant would have wanted to appeal under the circumstances of his conviction. Perez merely presents summary argument that he told his attorney to appeal the judgment. Perez was clearly advised at the sentencing hearing that he had the right to appeal, but there is no demonstration that he took any steps himself to file an appeal. [CR Doc. 112, p. 10.] Here, based on defense counsel's specific, sworn affidavit statement, made within days after entry of the Judgment, the Court concludes that Perez failed to show that his attorney's representation fell below an objective standard of reasonableness. Accordingly, the Court recommends that the ineffective assistance of counsel claim be denied and dismissed, with prejudice.

## II.     **ALLEGED VIOLATION OF THE FEDERAL MAGISTRATE ACT**

34.     Perez makes a number of arguments with respect to alleged violations of the Federal Magistrate Act, 28 U.S.C. §§ 631-639 (1988). He claims that the "Court and the Court appointed attorney took it upon themselves to adjudicate me (sentence) without me being present and not allowing me to address the Court prior to the sentence." [Doc. 1, p. 5]. Thus, he asserts that his sentencing hearing was held in violation of the Federal Magistrate Act.

35.     Perez also argues that he was unlawfully arraigned by a United States Magistrate Judge and that his "felony pleading" [sic] was accepted by a United States Magistrate Judge. [Doc. 1, Declaration/Affidavit of Perez, ¶¶ 2, 3.] Perez asserts that Magistrate Judges are not Article III Judges, and presumably argues that he was entitled to have an Article III Judge preside over his arraignment, preliminary hearing and sentencing hearing. [Doc. 1, exhibits.]

36.     Perez's argument demonstrates that he either misapprehends or simply misunderstands the role of a Magistrate Judge.  In the Inventory of Magistrate Judge Duties, an official publication of the Administrative Office of the United States Courts (3d Ed 1999), the role of a Magistrate Judge is defined as follows:

> A United States Magistrate Judge is a judicial officer of the United States District Court.  The authority that the Magistrate exercises is the jurisdiction of the court itself, delegated to the Magistrate Judge by the District Judges of the court under governing authority and local rules of court.
>
> Magistrate Judges serve as adjuncts to the Article III district courts and not as Article I judges.  Congress has clearly provided that a Magistrate Judge's role is to assist Article III judges rather than serve as a lower tier court.

Id. at p. 1.

37.     The Federal Magistrate Act authorizes Magistrate Judges to perform numerous tasks. *See* 28 U.S.C. §§ 636(b) and (c); Gomez v. United States, 490 U.S. 858, 867-70 (1989)( discussing the various tasks that a Magistrate Judge is authorized to perform).  So, too, numerous provisions of the U.S. Code vest Magistrate Judges with specific authority to perform a wide range of responsibilities.  Moreover, the federal criminal rules specifically serve to grant authority to Magistrate Judges to conduct a variety of tasks in criminal pretrial proceedings.

38.     Finally, recognizing the utility of Magistrate Judges and the significance of their assistance to Article III judges, Congress wisely authorized, "A Magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States."  28 U.S.C. § 636 (b)(3).

39.     In United States v. Ciapponi, 77 F.3d 1247 (10th Cir.), *cert. denied,* 517 U.S. 1215 (1996), the court spoke to this "additional duties clause" and stated:

9

> The legislative history of the Magistrates Act demonstrates that, in enacting the "additional duties" clause, Congress intended to aid overburdened District Courts with their caseloads by significantly expanding the duties which may be delegated to a magistrate judge to permit greater use of magistrate judges as judicial officers.

Id. at 1250 (*citing* United States v. Williams, 23 F.3d 629, 632-33 (2d Cir. 1994)).

40.     The District of New Mexico greatly utilizes their Magistrate Judges, and, pursuant to directives of the District's chief and active judges, all full-time Magistrate Judges are delegated the responsibility of performing all preliminary pretrial proceedings in the District Court.  Thus, to the extent Perez argues he was entitled to be arraigned by an Article III judge, an arraignment is a preliminary criminal proceeding that is delegated to the District's Magistrate Judges.  *See* Fed. R. Crim. P. 10, 43, 59.

41.     It is unclear what "felony pleading" Perez alleges was unlawfully accepted by a Magistrate Judge.  For example, there was no change-of-plea proceeding, as Perez was convicted at trial and not by a felony plea.  Even if Perez had proceeded to a felon plea proceeding, United States v. Ciapponi specifically authorizes a Magistrate Judge in the District of New Mexico to take felony pleas with the consent of the parties.

   ***B.     Discussion:***

42.     Perez's first argument is that a Magistrate Judge should not have sentenced him. Perez's position is refuted by the record. Perez was sentenced on August 15, 2007 by Senior District Court Judge John E. Conway, who is an Article III Judge.  [CR Docs. 90; 112.]  Perez was present at this sentencing hearing.  Thus, an Article III Judge, as opposed to a Magistrate Judge, sentenced Perez.

43. With respect to Perez's motion to reduce sentence after the sentencing guidelines were amended, Perez was again sentenced by Senior District Judge Conway, an Article III Judge. Thus, his claim that a Magistrate Judge conducted his sentencing hearing is without merit.

44. The Court further rejects Perez's position that his presence was required for the hearing and reduction of sentence proceeding on July 9, 2008, at which his sentence was reduced from 151 months to 121 months in accordance with recent sentencing guideline amendments. While it is true that Perez was not present at the July 9, 2008 hearing or proceeding during which his sentence was reduced, the sentencing minutes reflect that Perez's presence was waived. A defendant's presence is not required for a reduction of sentence under Fed. R. Crim. P. 35. Rule 43 of the Rules of Criminal Procedure specifically provides that a defendant need not be present when the proceeding involves a correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c). Fed. R. Crim. P. 43(b)(4). Perez's motion to reduce sentence was brought in accordance with 18 U.S.C. § 3582. [CR Doc. 100.] Accordingly, there was no need for Perez's attendance at the later hearing.

45. In addition, as is clear, a United States Magistrate Judge is permitted to conduct the arraignment and preliminary hearing as was done in this case. *See supra*. Thus, no violation of the Magistrate Act occurred. Further, Perez did not enter into a plea; instead, he proceeded to a jury trial where the jury found him guilty. He pled not guilty at the arraignment [CR Doc. 21], but as state previously, a Magistrate Judge is authorized to conduct arraignments and to accept not guilty pleas.

46. The government also asserts this claim as well as claims discussed *infra* are subject to dismissal because they are procedurally defaulted. Perez did not raise this claim at pretrial, at the trial on the merits, or on direct appeal. "Review under § 2255 is not an alternative to appellate

11

review for claims that should have been presented on direct appeal but were not." United States v. Magleby, 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied*, 126 S.Ct. 1879 (2006). Consequently, if a defendant fails to raise an issue at trial or on direct appeal, he faces a procedural bar to raising that issue on collateral review. United States v. Barajas-Diaz, 313 F.3d 1242, 1245 (10th Cir. 2002). "To overcome the procedural bar, the movant must establish either good cause for not raising the issue earlier and resulting actual prejudice to his defense from the court's failure to consider this claim, or a fundamental miscarriage of justice from not considering the claim." United States v. Hughes, 2006 WL 1675928 at *2 (D. Kan. June 15, 2006) (*citing* United States v. Cervini, 379 F.3d 987, 990 (10th Cir. 2004)). Perez has failed to overcome the procedural bar. Even if he could demonstrate good cause for not raising this claim earlier, there is no evidence presented to show there was actual prejudice to Perez as a result of the Court's failure to consider this issue or that there was a fundamental miscarriage of justice. For all of these reasons, the Court recommends that Perez's claims involving alleged violations of the Magistrate Act be denied and dismissed with prejudice.

### III.     ALLEGED SPEEDY TRIAL VIOLATION

47.     "The Speedy Trial Act generally requires a trial to begin within 70 days of the filing of an indictment or the defendant's initial appearance [whichever date last occurs], 18 U.S.C. § 3161(c)(1), but provides a number of exceptions excluding specific periods of delay from being counted toward the 70-day time limit . . . ." United States v. Artez, 290 F. App'x 203 at *2-3 (10th Cir. Aug. 29, 2008) (*citing* 18 U.S.C. § 3161(h)). If the defendant is not brought to trial within the required time, an indictment will be dismissed on motion of the defendant. 18 U.S.C. § 3162(a)(2).

48.     Perez asserts that there were "approximately 310 days of Speedy Trial Act Violations." [Doc. 1, Declaration/Affidavit of Perez, pp. 22, ¶ 4.] Perez further argues that

continuances cannot be granted, thereby defeating a defendant's right to a speedy trial, "simply to serve [sic] trial court's own scheduling needs. . . ." [Id. at ¶ 17.] Perez includes a "Speedy Trial Act Calendar" for his case indicating how he calculated that the Speedy Trial Act was violated by 310 days.  [Doc. 1, Exhibit, pp. 26-27.]

49.	Perez does not take into account that all of the continuances were either prompted by his co-defendant or Perez himself, or that he did not object to his co-defendant's requests for continuances.  The parties further agreed that the continuances would not be counted against the Speedy Trial deadline.  *See, e.g.,* CR Doc. Nos. 25, 26, 38, 39, 44, 46, 57, 60, 68.  The Court did not initiate any of the continuances, but instead, ruled on the parties' motions for additional time.  Thus, it cannot be said that any of the continuances were granted "to serve the trial court's own scheduling needs."

50.	The appropriate calculation for purposes of the Speedy Trial Act is as follows:

1/24/06:	Indictment returned by Grand Jury, charging Perez and co-defendant. [CR Doc. 15.]

2/2/06:	Perez arraigned.  [CR. Doc. 21.] [**Speedy Trial time begins**]

2/13/06	Co-defendant filed motion to extend time to file motions, tolling speedy trial clock.  [CR Doc 25.] [**11 days have passed for purposes of Speedy Trial computation & time tolled from this date**]

2/21/06	Court grants motion to extend. **[Speedy Trial clock resumes**] [CR Doc. 26.]

3/23/06	Court sets trial for 4/18/06.  [CR Doc. 35.] [**41 days have passed for Speedy Trial computation**]

4/10/06	Co-defendant files motion for continuance that is unopposed by Perez. Speedy Trial clock is tolled.  [CR Doc. 38.]  [**58 days have passed for Speedy Trial computation; time tolled as of this date forward because Defendant either requested continuances of the trial date or mental evaluations**]

13

| | |
|---|---|
| 4/11/06 | Court grants continuance, including waiver of speedy trial time. [CR Doc. 39.] Trial is re-set for August 12, 2006. [CR Doc. 39.] |
| 7/24/06 | Court resets Perez's trial for August 15, 2006. [CR Doc. 43.] |
| 8/1/06 | Co-defendant's motion for competency evaluation is filed, and also a motion for continuance of August 15 trial date. [CR Docs. 44, 45.] |
| 8/10/06 | Court enters Order sending Perez for competency evaluation. [CR Doc. 46.] |
| 8/17/06 | Court re-sets trial for co-defendant Perez for 9/12/06. [CR Doc. 47.] She filed motion for continuance of trial date based on needs related to the mental evaluation. [CR Doc. 48.] The motion was unopposed, but did not involve Perez since his mental evaluation was ongoing at this point. |
| 8/31/06 | Court continued trial date for Charlene Perez. [CR Doc. 51.] |
| 12/14/06 | Court re-set trial for both Defendants for 1/9/07. [CR Doc. 52.] |
| 12/18/06 | Both Defendants move to continue January 07 trial date, agreeing that Speedy Trial time is tolled. [CR Doc. 53.] |
| 12/22/06 | Court grants continuance of January 9, 2007 trial date and excludes Speedy Trial time. [CR Doc. 54.] |
| 1/18/07 | Competency hearing is held regarding Perez. Competency portion of hearing is stayed. Defense counsel McIntyre is allowed to withdraw as counsel for Perez. [CR Doc. 57.] |
| 1/28/07 | Co-defendants' motion for continuance of February 2007 trial setting. [CR Doc. 60.] |
| 1/29/07 | Court grants continuance, including waiver of Speedy Trial deadline. [CR Doc. 61.] Trial is reset for April 17, 2007. [CR Doc. 68.] |
| 2/26/07 | Agreed Order entered finding Perez competent to stand trial. [CR Doc. 62.] |
| 4/17/07 | Trial of Perez. [CR Doc. 77.] |

51.     The Speedy Trial clock was tolled during the periods when Perez sought to and did obtain a mental evaluation, along with the related hearing. Delays resulting from examinations to determine the mental competency of a defendant are tolled. United States v. Hernandez-Mejia, 2008

WL 4104134 at *5 (D.N.M. Apr. 8, 2008) (*citing* 18 U.S.C. § 3161(1)(A)).  Delays prompted by motions for continuances through the date of the re-scheduled hearing or trial are not calculated. 18 U.S.C. § 3161(1)(F).  *See also* United States v. McCuiston, 2007 WL 527834 at *5 (D. Kan. Feb. 14, 2007) ("ends of justice continuance of the trial date excludes all delay attributable to the continuance-from the former trial date to the new trial date") (*citing* United States v. Apperson, 441 F.3d 1162 (10th Cir.2006), *cert. denied,* 549 U.S. 1117 (2007)).   In this case, Perez or his co-defendant both sought repeated continuances of the trial settings either due to requests for mental evaluations, because they changed attorneys and their attorneys required additional time to prepare, or because they were attempting to enter into plea bargains.  Thus, the Court's calculation is that only 58 days passed on the Speedy Trial calendar and there was no violation of the Act.  Accordingly, Perez's Speedy Trial claim is without merit.

52.    Moreover, the Speedy Trial Act places upon the defendant the burden of asserting a violation of the Act.  If a defendant fails to move for dismissal prior to trial or the entry of a plea of guilty, such inaction constitutes a waiver of the right to dismissal under the Speedy Trial Act. United States v. Spring, 80 F.3d 1450, 1456 (10th Cir.) (internal citations omitted), *cert. denied*, 519 U.S. 963 (1996).

53.    In addition, the Speedy Trial claim was not raised on appeal and for the reasons discussed *supra* at ¶ 46, the claim is procedurally barred.

54.    For all of the above-stated reasons, the Court recommends that the Speedy Trial claim be denied and dismissed, with prejudice.

### IV.    ALLEGED DEFECTIVE INDICTMENT; SUBJECT MATTER JURISDICTION

55.    Perez also brings claims asserting that the Indictment against him was fatally defective because he was not charged with having committed any act in violation of the United

States Constitution.  Perez further asserts that the Court lacked subject matter jurisdiction because "no evidence of any type of contract [was] ever signed by the Defendant . . . ."  [Doc. 1, pp. 9, 28.] Perez contends that the Indictment did not state that the alleged crime occurred in the United States.  Perez sets forth a number of other nonsensical and meritless arguments in his "Declaration/Affidavit" in support of these claims.  [Doc. 1, pp. 28-35.]

56.     It is true that a challenge to the sufficiency of an indictment is never waived.  United States v. Bazile, 2008 WL 4453106 at *2 (N.D. Okla. Sept. 30, 2008) (internal citations omitted). However, if the legal sufficiency of the indictment is not raised during trial, the "challenged language" will be construed liberally in favor of validity.  United States v. Sullivan, 919 F.2d 1403, 1410 n. 5 (10th Cir. 1990.)   The general test for sufficiency of an indictment, after a conviction, is whether the indictment, "by any reasonable construction can be said to charge the offense for which the sentence was imposed."  Id.  An indictment is sufficient if it contains the elements of the offenses charged and fairly informs a defendant of the charges against which he must defend, and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997).   Here, the Indictment [CR Doc. 15] clearly sets out the charges against Perez and the alleged violations of federal law.  The Indictment fully appraised Perez of the offenses, the elements and the essential allegations.  There is no requirement that an Indictment must allege a violation of the United States Constitution. Perez was convicted by a jury on all eight counts of the Indictment and was sentenced accordingly.

57.     Moreover, there is no jurisdictional deficiency in the Indictment, which charges Perez with crimes in Bernalillo County and in the State and District of New Mexico.  The district courts of the United States, where this Indictment was brought, have original jurisdiction over all offenses against the laws of the United States.  U.S. Const. Art. III; 18 U.S.C. § 3231.  The offenses charged

against Perez in the Indictment are all federal offenses and arise under the laws of the United States. Thus, the Court unquestionably had subject matter jurisdiction over this matter.

58. In addition, for the reasons articulated *supra* at ¶ 46, these claims are procedurally barred.

59. For all of the above-stated reasons, the Court recommends that these claims be denied and dismissed, with prejudice.

### **Recommended Disposition**

The Court recommends that Perez's § 2255 petition be denied [Doc. 1], and that the case be dismissed, with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge